## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **ALLSTATE INSURANCE COMPANY**<br><br>**2775 Sanders Road**<br>**Northbrook, IL  60062**<br><br>**Plaintiff**<br>v.<br><br>**ELECTROLUX HOME PRODUCTS, INC.**<br><br>**10200 David Taylor Drive**<br>**Charlotte, NC  28262**<br><br>**Defendant** | **Civil Action No.**<br><br>**Jury Trial Demanded**<br><br><br>**AUGUST 15, 2022** |

## COMPLAINT

Plaintiff, by and through its counsel, hereby demands judgment against the above-named defendant and, in support thereof, alleges the following:

### PARTIES

1.     Plaintiff, Allstate Insurance Company ("Allstate" or "Plaintiff") is a business entity organized and existing under the laws of Illinois and maintains its principal place of business at the above-captioned address.  Allstate was duly authorized to engage in the business of insurance in Connecticut.

2.     Plaintiff's subrogor, William P. Bailey (hereinafter "Plaintiff's subrogor" or "Mr. Bailey") is an adult individual who, at all times relevant hereto, was the owner of real property located at 15 Sweetbrier Road, East Granby, CT  06026 (hereinafter referred to as "the subject property").

1

3.      At all times relevant hereto, Allstate provided insurance to its subrogor under a policy of insurance, which was in full force and effect on all relevant dates, and at all relevant times herein.  As such, Allstate is subrogated to the rights and interests of its subrogor, William Bailey, for any claims arising under the policy, as described above, including the claims giving rise to the within cause of action.

4.      In the wake of the fire described below, as a result of claims made on said policy (which were duly paid pursuant thereto), Allstate became subrogated to certain rights and interests of its subrogor for monies paid thereunder, including the claims giving rise to the within cause of action.

5.      Defendant, Electrolux Home Products, Inc. (hereinafter "Electrolux"), was, upon information and belief and at all times material hereto, a citizen of North Carolina and Delaware corporation with its principal place of business at the above-captioned address and authorized to do business within the state of Connecticut.  Electrolux regularly conducts business in Connecticut.

6.      Electrolux is in the business of designing, assembling, manufacturing, selling, distributing and/or marketing home appliances such as the electric ball-hitch style clothes dryer at issue in this suit (hereinafter the "subject dryer").

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332 because Plaintiffs are citizens of a state diverse from Defendant and the amount in controversy exceeds $75,000.00 exclusive of interest, fees, and costs.

8.      This Court has personal jurisdiction over this matter because Defendant purposefully availed itself to the benefit of the laws of this judicial district by regularly transacting

2

and/or conducting business in this territorial jurisdiction of this United States District Court, which is located in the state of Connecticut.

9.      Venue is appropriate under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, and/or a substantial part of property that is the subject of the action is situated.

## FACTS

10.     Plaintiff incorporates by reference the preceding averments as though set forth at length herein.

11.     This claim arose from a fire that occurred on October 6, 2019, caused by normal and ordinary use of a ball-hitch clothes dryer that was designed, manufactured, distributed, and sold into the stream of commerce by Electrolux.

12.     Electrolux's ball-hitch dryers are defective.  The dryers cause lint to accumulate and ignite behind the drum during normal use. Plastic construction of internal components exposed to flame during operation exacerbates the risk of internal fire-spread. Ignition of internal plastic components during use can cause smoke and flame to escape the ball-hitch dryer cabinet and cause substantial injury, death or property damage.

13.     Electrolux's ball-hitch dryers are unreasonably and unnecessarily dangerous.

14.     Electrolux could have and should have substantially reduced or eliminated the risk of fire ignition and fire-spread within the dryer cabinet during ordinary and normal use by making simple, feasible and proven design changes.

15.     For example, by using an available, alternative design, Electrolux could and should have eliminated the ability of lint to accumulate in the hidden space behind the drum where ignition often occurs in its ball-hitch dryer during ordinary and normal use.

16.     Electrolux, moreover, could and should have substantially reduced or eliminated the ability of an internal fire to spread internally and, eventually, escape the confines of the dryer cabinet by constructing internal air ducts and assemblies from metal rather than combustible plastics.

17.     Electrolux knew that internal cabinet fires were likely to occur during normal and ordinary ball-hitch dryer use when it manufactured and distributed the subject dryer, but ignored the problem in conscious or reckless disregard to the rights and safety of consumers, including Plaintiff's subrogor.

18.     Electrolux never warned consumers, including Plaintiff's subrogor, about the ball-hitch dryer's propensity to ignite and spread fire internally during normal and ordinary use.

19.     Electrolux, instead, only distributed standard warnings with its ball-hitch dryers, which were applicable to dryers generally and did not account for, address or otherwise warn users about latent fire hazards associated with normal and ordinary use of the ball-hitch dryer.

20.     Electrolux failed to provide ball-hitch dryer users, including Plaintiff's subrogor, with all information necessary to correctly disassemble and clean the dryer's components, even though Electrolux secretly deemed that procedure necessary to occur at least every 18 months to ensure safe operation of its ball-hitch dryer.

21.     Electrolux concealed the scope of the defective nature of its dryers since it began distribution as early as 1988.

22.     Since 1988, Electrolux has settled thousands of dryer fire claims confidentially, often ordering the destruction of evidence as a term of settlement.

23.     Electrolux failed to report thousands of dryer fires to the United States Consumer Product Safety Commission, despite being obligated to do so per the Consumer Product Safety Act.

24.     The Japanese government banned Electrolux from distributing the defective ball-hitch dryers in Japan in 2004 because of fires caused by the defects described above, yet Electrolux continued to distribute the defective dryers for sale in the United States.

25.     In 2007, Electrolux quietly began building a different kind of freestanding dryer in Mexico for distribution in the United States. This dryer, known as a bulkhead design, is substantially the same design as that built by Electrolux's competitors since the 1960s. The bulkhead dryer substantially reduces or eliminates the risk of internal fire by reducing lint accumulation in hidden spaces adjacent to heat sources during use.

26.     Since 2007, Electrolux is aware of only a handful of allegations of internal lint fires involving bulkhead dryers versus more than 6,000 alleged ball-hitch fires.

27.     By 2011, Electrolux ceased manufacturing ball-hitch dryers in the United States entirely.

28.     By 2014, Electrolux closed its U.S. plant, demolished the factory and terminated all but a few U.S. employees directly involved with the ball-hitch dryer's design and construction.

29.     Today, all dryers manufactured by Electrolux are capable of containing an internal fire originating in the dryer drum or dryer base – a performance capability formally proposed by the Association of Home Appliance Manufacturers ("AHAM," of which Electrolux is a voting member) in 2002.

30.     Electrolux knew how to build fire-containing dryers in 2002 at little or no additional cost, but refused to incorporate that performance capability until 2013, when a third-party listing agency required the change in order for Electrolux to maintain its listing.

31.     As a direct and proximate the result of the defects, acts and omissions described above, a dryer fire occurred and Allstate was required to make payment on the subject claim.

## COUNT I – CONNECTICUT STRICT PRODUCT LIABILITY
### PLAINTIFFS v. ELECTROLUX

32.     Plaintiff repeats the allegations set forth in the prior paragraphs of this Complaint as though they were set forth at length herein.

33.     Electrolux was engaged, in the business of designing, testing, inspecting, assembling, manufacturing, and distributing clothes dryers, and their component parts, and specifically designed, tested, inspected, assembled, manufactured, distributed, and placed into the stream of commerce the subject dryer at issue in this case.

34.     The subject dryer, which was designed, manufactured, sold and/or distributed into the stream of commerce by Electrolux, were not modified, changed, altered, or abused by Plaintiffs' subrogor or other users at said property prior to or during its use, and was in essentially the same condition as when it left the hands of Electrolux at the time of the subject fire.

35.     Electrolux knew and intended that its dryer would be used by members of the general public, and knew of the specific uses, purposes, and requirements for which said dryer would be utilized.

36.     Electrolux designed, tested, inspected, manufactured, sold and/or distributed into the stream of commerce the subject dryer, including its component parts, in a defective condition unreasonably dangerous to the user, which catastrophically failed due to its defect that could not have been discovered by its users in the exercise of reasonable care.

6

37.     Electrolux designed, tested, inspected manufactured, sold and/or distributed into the stream of commerce the subject dryer in a defective condition, unreasonably dangerous to Plaintiff's subrogor and his property and/or not merchantable and reasonably suited to the use intended by Plaintiff's subrogor for his property.

38.     Electrolux knew, or should have known, that the subject dryer would, and did, reach Plaintiff's subrogor without substantial change in the condition in which it was originally selected and sold.

39.     The subject dryer was not materially altered in anyway which would affect the dangerous conditions caused and created by Electrolux.

40.     The subject dryer was defective and unreasonably dangerous for the use intended at the time it left the control of Electrolux because:

    a.     the subject dryer was designed, manufactured and sold with a heater pan directly behind the drum and in direct proximity to the electric heat source so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

    b.     the subject dryer was designed, manufactured and sold with a combustible plastic air duct directly below the drum and combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum during its intended operation as a clothes dryer;

    c.     the subject dryer was designed, manufactured and sold so that particles of lint that accumulate and ignite behind the drum and within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

    d.     the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

e.   the subject dryer was designed, manufactured and sold in a manner that accumulates lint in areas within the clothes dryer that are not serviceable by the homeowner;

f.   the subject dryer was designed, manufactured and sold with combustible plastic components within which it was foreseeable that lint would accumulate and ignite;

g.   the subject dryer was designed, manufactured and sold without adequate warning to the user regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

h.   the subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

i.   the subject dryer was designed, manufactured and sold without any warning contained on the clothes dryer regarding the known danger that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

j.   the subject dryer was designed, manufactured and sold with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the subject dryer;

k.   the subject dryer was designed, manufactured and sold with combustible plastic components, which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

l.   the subject dryer was designed, manufactured and sold with combustible plastic components which Electrolux knew, or should have known, would not prevent the fire from escaping the dryer cabinet if they became ignited;

m.   The subject dryer was designed, manufactured and sold without adequate warnings regarding the known danger of the inherent accumulation of combustible lint in areas of the dryer which are not visible to the user and in close proximity to the dryer's gas or electric heat source, in areas which are not serviceable by the user, and pose a fire risk;

n.   the subject dryer was designed, manufactured and sold in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds

8

the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

o.   the subject dryer was designed, manufactured and sold with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

p.   the subject dryer is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics;

q.   probability of injury times the gravity of injury under the current design of the subject dryer is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design;

r.   the foreseeable risks of harm posed by the subject dryer could have been reduced or avoided by the adoption of a reasonable alternative design(s) by the seller and the omission(s) of the alternative design(s) renders the subject dryer not reasonably safe;

s.   common experience teaches that the fire would not have occurred in the subject dryer in the absence of a defect; and

t.   the foreseeable risks associated with the design of the subject dryers exceed all benefits;

41.   The aforementioned defects or defective conditions existed at the time the subject dryer left the possession and/or control of Electrolux and, at that time, practical and technically feasible alternative production practices were available that would have prevented the harm without significantly impairing the usefulness or desirability of the product to users and without creating equal or greater risk of harm to others.

42.   The defective, unreasonably dangerous and unsafe condition of the subject dryer was a direct and proximate cause of the damages sustained by Plaintiff.

43.   Additionally, at all times material hereto, Electrolux had a duty to exercise reasonable care in the design, manufacture, and distribution of the subject dryer and breached said duty.

9

44.     Upon information and belief, Electrolux breached its duty of care by, among other things, negligently, carelessly and recklessly designing, manufacturing, testing, inspecting and distributing the subject dryer with willful, wanton lack of care.

45.     Upon information and belief, Electrolux's negligent, careless, reckless, willful and wanton acts and omissions include, but are not limited to:

a.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer with a heater pan directly behind the drum and in direct proximity to the gas or electric heat source of the clothes dryer so that lint released by the laundry tumbling in the drum could migrate to and accumulate behind the drum and in the heater pan where it could be ignited by the heat source of the clothes dryer and become a primary fuel source for an internal dryer cabinet fire;

b.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer with a combustible plastic air duct directly below the drum and a combustible plastic blower housing adjacent to that air duct, which combustible plastic components accumulate combustible lint released by the laundry tumbling in the drum;

c.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer so that particles of lint that accumulate and ignite within the heater pan can travel into and through the drum and thereby ignite the additional lint that has accumulated within the combustible plastic air duct and blower housing and/or the laundry load that has been dried in the drum;

d.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer in a manner that accumulates lint in areas within the subject dryer that are not visible to the user unless the clothes dryer cabinet is dismantled and clothes dryer drum is removed;

e.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer in a manner that lint accumulates in areas within the clothes dryer that are not serviceable by the user;

f.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer with combustible plastic components, within which components it was foreseeable that lint would accumulate and ignite a fire when the particles of the lint came into contact with the clothes dryer's gas or electric heat source;

g.     Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer without any way to contain a fire which may ignite;

10

h.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer without conducting any fire risk studies on the design of the product;

i.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer without conducting any lint accumulation studies during the design of the product;

j.   Carelessly, negligently and recklessly failed to advise or instruct appliance service personnel of a need to dismantle the subject dryer and to remove lint from behind the dryer drum and from within the combustible plastic air duct and blower housing;

k.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer without adequate warning to the user that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

l.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer without any warnings contained on the clothes dryer that lint can accumulate and ignite in areas behind the drum and within the combustible plastic air duct and/or blower housing, which areas are not visible to or serviceable by the user;

m.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer with front drum seals that failed to seal the drum from the surrounding cabinet and thereby promoted the accumulation of lint behind the drum and in the heater pan where it could be ignited by the gas or electric heat source of the clothes dryer;

n.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer with combustible plastic components which Electrolux knew, or should have known, could ignite and permit the fire to escape the dryer cabinet;

o.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer with a defective ball hitch and/or bearing, which Electrolux knew, or should have known would fail when subjected to lint accumulation during normal and foreseeable use;

p.   Carelessly, negligently and recklessly designed, manufactured and sold the subject dryer in a defective nature because the lubricant used at or near the ball hitch or ball bearing – which holds the dryer's drum in place – contained an improper lubricant that was or could be effected by lint accumulation and fail;

q.   Carelessly, negligently and recklessly designed and manufactured with improper component parts, including, but not limited to materials or lubricant near or at

11

the dryer's ball hitch and/or bearing located behind the drum;

r.   Carelessly, negligently and recklessly designed and manufactured with improper component materials, including but not limited to the bearing that holds the dryer's drum in place, which can fail when subjected to lint accumulation;

s.   Carelessly negligently and recklessly failed to advise the user of the necessity to remove the dryer drum of the subject dryer and remove all lint from behind the dryer drum;

t.   Carelessly, negligently and recklessly failed to issue a service bulletin on the subject dryer on the necessity to remove the dryer drum of the clothes dryer and remove all lint from behind the dryer drum;

u.   the subject dryer is an unreasonably dangerous product one that is dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community of its characteristics; and

v.   the subject dryer is an unreasonably dangerous because the probability of injury times the gravity of injury under the current product design is more than the cost of an alternative reasonable design plus the diminished utility resulting from modifying the design.

46.     As a direct and proximate result of one or more of the aforementioned actions or omissions and the defective and unreasonably dangerous condition of the subject dryer, the subject dryer ignited and burned at the subject property, causing extensive property damage, and caused other consequential and incidental damages including clean-up costs, repair, and other associated expenses.

47.     For these reasons, Electrolux is strictly liable to Plaintiffs under the Connecticut Product Liability Act §§ 52-240(a)-52-577(a), §402A of the Restatement (Second) of Torts, and associated case law of the state of Connecticut.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in its favor and against Defendant, Electrolux Home Products Inc., plus interest, delay damages, and for such other relief as this Honorable Court shall deem appropriate under the circumstances.

RESPECTFULLY SUBMITTED,
THE PLAINTIFF,

By:     /s/ Derek E. Donnelly #ct28922
        Derek E. Donnelly, Esq.
        Blackburn and Donnelly, LLC
        Two Concorde Way, Suite 3-C
        P.O. Box 608
        Windsor Locks, CT 06096
        (860) 292-1116
        dd@sgblackburn.com

        s/ Patrick A. Hughes
        Raymond E. Mack (*pro hac vice*)
        Patrick A. Hughes (*pro hac vice*)
        de Luca Levine LLC
        301 East Germantown Pike, Suite 301
        East Norriton, PA  19401
        (215) 383-0081 (phone)
        (215) 383-0082 (fax)
        rmack@delucalevine.com
        phughes@delucalevine.com

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Allstate Insurance Company

**DEFENDANTS**

Electrolux Home Products, Inc.

**(b)** County of Residence of First Listed Plaintiff   Cook
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Mecklenburg
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Derek E. Donnelly, Esq. Blackburn & Donnelly, LLC
P.O. Box 608, Windsor Locks, CT 06096

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [ ] 3   Federal Question *(U.S. Government Not a Party)*
- [x] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [x] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [x] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| | | | [ ] 791 Employee Retirement Income Security Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28:1332pl

Brief description of cause:
The dryer manufactured by the Defendant was defective causing lint to accumulate and igniting a fire at the insured's property.

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
Excess of $75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
08/15/2022

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____